FIRST STATE BANK IN TALIHINA, an Oklahoma Corporation, Appellee,

v.

UNITED DOLLAR STORES, an Arkansas Corporation, Appellant.

No. 49666.

Supreme Court of Oklahoma.

Nov. 8, 1977.

*      *      *

Smith, Knight & Stuart by Ted A. Knight, Poteau, for appellee.

Hamilton & McBee by George H. McBee, Poteau, for appellant.

HODGES, Chief Justice.

This appeal involves the question of competing priorities between secured parties holding a security interest in the same inventory.

Janetta Rice and Max Westen, then husband and wife, purchased a United Dollar Store from the existing owner-operator. To finance the purchase, they arranged for a $20,000 loan from the First State Bank of Talihina, Oklahoma, appellee (Bank). They

executed a note and security agreement covering all inventory, stock, furniture, fixtures and equipment located in the United Dollar Store in Talihina, Oklahoma, September 28, 1973. A financing statement covering the collateral was filed in the County Clerk's Office of LeFlore County, Oklahoma, October 3, 1973. In addition, the Bank took as additional collateral a mortgage on real estate not associated with the business enterprise.

Prior to the execution of the note and security interest, Ms. Rice attempted to complete the transfer of the franchise into her name. On August 28, 1973, she submitted an application for dealership to United Dollar Stores, appellant. The application required the party to supply United Dollar with information concerning how the business was to be capitalized. Ms. Rice indicated that $20,000 of the needed capital would be borrowed from the Bank.

In the early Fall, 1973, Ms. Rice met with United Dollar's franchise consultant to finalize the transfer of the franchise. The testimony is conflicting as to exactly what took place at this meeting. Ms. Rice testified that during the course of the meeting she told the consultant that she would be borrowing money from the Bank and other sources to finance the business. She also testified that the application form had a place to indicate where she was borrowing the money, but it provided no place for explanation of what the loan was to be used for; she was not asked, nor did she disclose she was giving a security interest to the Bank on the inventory, or that she was aware she was giving a security interest to United Dollar on the same collateral she had given the Bank. The franchise consult-

ant testified the meeting took place before the Bank's security agreement and financing statement were executed, and, therefore, there could have been no actual knowledge by United Dollar of the contents of the Bank's improperly filed financing statement.

On October 3, 1973, Ms. Rice entered into a security agreement with United Dollar which covered the identical collateral, inventory, merchandise and fixtures. United Dollar's financing statement was filed on November 16, 1973, in the County Clerk's Office of Oklahoma County, and on December 3, 1973, in the County Clerk's Office of LeFlore County.

In September, 1975, Ms. Rice filed a petition in voluntary bankruptcy. The controversy about priority between the Bank and United Dollar arose during the proceedings. The inventory was released by the trustee in bankruptcy as being burdensome.

Following the release of the inventory, the Bank filed its petition initiating this action. The trial court found that the Bank's security interest was prior and superior to that held by United Dollar. The court held there was a good faith, if incomplete filing by the Bank, prior to the taking of or perfection of the security interests of United Dollar and prior to the advancement of funds by United Dollar against the same collateral. United Dollar was held to be charged with knowledge of the contents of the Bank's financing statement on file in LeFlore County according to the definitions of knowledge and notice pursuant to 12A O.S.1971 § 1–201(25),[1] 12A O.S.1971 § 9–401(2),[2] and 25 O.S.1971 § 13.[3]

1. It is provided by 12A O.S.1971 § 1–201(25) in pertinent part:

A person "knows" or has "knowledge" of a fact when he has actual knowledge of it. "Discover" or "learn" or a word or phrase of similar import refers to knowledge rather than reason to know.

2. The place of filing and effect of erroneous filings are determined by 12A O.S.1971 § 9–401(1)(2).

(1) The proper place to file in order to perfect a security interest is as follows:

(a) when the collateral is equipment used in farming operations, or farm products, or accounts, contract rights or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the county clerk in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the county clerk in the county where the goods are kept, and in addition when the collateral is crops in the office of

It is asserted on appeal that United Dollar had a first lien on the inventory because its financing statement was properly filed as required by 12A O.S.1971 § 9–401(1)(c)[4] in the office of the County Clerk of Oklahoma County and that the Bank failed to show that it filed in LeFlore County in good faith or that United Dollar had actual knowledge of the contents of the Bank's financing statement.

■ The perfection of a security interest by filing requires the determination of the proper county in which to file. If the collateral is classified as business inventory, the security agreement is to be filed with the court clerk of Oklahoma County.[5] The purpose of the requirement that the financing statement be recorded is to give notice to parties whose interests may be affected.[6] Courts have uniformly held that filing requirement of the Code is mandatory, and that filing of a financing statement in an improper place or not in all the places required is ineffective to perfect a security interest except as against one with actual knowledge.

However, the fact the Bank did not timely file its financing statement in the office of the court Clerk of Oklahoma County is not dispositive of the appeal because of 12A O.S.1971 § 9–401(2).[7] Under its provisions, all is not lost for the secured creditor who files but fails to file in all of the necessary places. In some instances this section will save the careless creditor. It is provided by 12A O.S.1971 § 9–401(2) that a filing which is made in good faith in an improper place, or not in all places required by the Code, is nevertheless effective in regard to collateral covered by a financing statement against any person who has knowledge of the contents of the financing statement.[8]

■ In order to determine lien priorities, we must carefully examine the language contained in 12A O.S.1971 § 9–401(2) which protects the secured party when he has filed one financing statement to perfect interests in more than one type of collateral, and the filing is correct for one but not for all the types of collateral covered. The good faith language of the section means merely making an effort to file. But no amount of good faith can give effect to a completely improperly filed financing statement of which no one has knowledge.[9]

the county clerk in the county where the land on which the crops are growing or to be grown is located;

(b) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded;

(c) in all other cases, in the office of the county clerk of Oklahoma County.

(2) A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this Article and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

3. Circumstances which put one on inquiry resulting in constructive notice are set forth by 25 O.S.1971 § 13:

Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.

4. See note 2, supra.

5. *Woodson v. Utica Square National Bank of Tulsa,* 447 F.2d 241, 243 (10th Cir. 1971).

6. *First Security Bank of Utah, N.A. v. Wright,* 521 P.2d 563 (Utah 1974).

7. See note 2, supra:

8. *In Re Hurt Enterprises, Inc.,* 321 F.Supp. 1307, 1309 (W.D.Va.1971); *Sequoia Machinery, Inc. v. Jarrett,* 410 F.2d 1116, 1119 (9th Cir. 1969); *In re Bethlehem Concrete Corp.,* 306 F.Supp. 1047, 1049 (E.D.Pa.1969); *Meadows v. Bierschwale,* Tex., 516 S.W.2d 125, 133 (1974); Annot., "Construction and Effect of UCC Art. 9, Dealing with Secured Transactions, Sales of Accounts, Contract Rights, and Chattel Paper," 30 A.L.R.3d 9, 72 (1970).

9. *In Re Komfo Products Corp.,* 247 F.Supp. 229 (E.D.Pa.1965); *In Re Lux's Superette, Inc.,* 206 F.Supp. 368 (E.D.Pa.1962).

The statute provides that when a subsequent lien claimant has notice of a prior lien, the priority of the earlier lien is not defeated because it was imperfectly filed or was filed in less than all the places required by statute. For the purposes of the Code, knowledge means actual knowledge or reason to have actual knowledge, not constructive knowledge in any broader sense. If as a matter of law, persons were charged with constructive knowledge or reason to have knowledge of a security interest filed in only one of two required places, the requirement would be useless.[10] Constructive notice is defined by 25 O.S. 1971 § 12 as notice imputed by law to a person not having actual notice. The utilization of constructive notice by the trial court in its application to the Uniform Commercial Code filing requirements pursuant to 12A O.S.1971 § 9–401(2) and 12A O.S. 1971 § 1–201(25) was clearly erroneous. The court misinterpreted the language of 12A O.S.1971 § 1–201(25) and mistakenly applied 25 O.S.1971 § 13, constructive notice.

The Bank also attempted to prove actual knowledge by United Dollars of the improperly filed financing statement by the testimony of Janetta Rice, the debtor. However, she testified she was not asked, nor did she disclose she was giving a security interest to the Bank on the inventory. The Bank further attempted to prove knowledge by United Dollar of its financing statement by virtue of a meeting by Janetta Rice and appellant's franchise consultant. However, this meeting took place before the appellee's security agreement and financing statement were ever executed by the debtor and, therefore, there could have been no "actual knowledge" by the appellant of the contents of appellee's financing statement. The application for franchise reflected only that $20,000 would be borrowed from First State Bank in Talihina.

We appreciate that strict adherence to the Code requirements may lead to unjust results in some cases, but efforts by courts to fashion equitable solutions to mitigate the hardship on particular creditors of literal application of statutory filing requirements would have the deleterious effect of undermining the reliance placed on them. The eventual harm would be more serious than the occasional harshness resulting from strict enforcement.[11]

The provisions of the Code relating to the place of filing financing statements are to be strictly construed and a departure cannot be made from the statutory requirements on the theory of balancing the equities or the hardships. In the interest of preserving certainty in commercial transactions, the minimal filing requirements established by the Code should be maintained.[12]

REVERSED.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, IRWIN, BERRY, BARNES and DOOLIN, JJ., concur.

SIMMS, J., dissents.

10. *United States v. Ed Lusk Construction Co., Inc.*, 504 F.2d 328, 331 (10th Cir. 1974).

11. *Uniroyal, Inc. v. Universal Tire & Auto Supply Co.*, 557 F.2d 22 (1st Cir. 1977).

12. 2 R. Anderson, "Uniform Commercial Code," p. 432 § 9.401(5) (2nd ed. 1971).