**POTEAU STATE BANK, a banking corporation, Appellee,**

v.

**MITCHELL FLYING SERVICE, INC., a corporation, and William L. Holt and Billie Jo Holt, Appellants.**

**No. 50430.**

Court of Appeals of Oklahoma, Division No. 1.

July 31, 1979.

Released for Publication by Order of Court of Appeals Aug. 30, 1979.

Sullivan & Sanders by Douglas W. Sanders, Poteau, for appellee.

Larry B. Lucas, Poteau, for appellants.

BOX, Judge:

An appeal by William L. Holt and Billie Jo Holt, defendants and cross petitioners below, from a judgment of the trial court decreeing that Poteau State Bank, plaintiff below, had priority over the Holts in collateral of Mitchell Flying Service, Inc., defendant below.

The facts are uncontested. In 1972 the Holts owned an airplane dealership and flying service, Mitchell Flying Service, Inc. James Mitchell was president of the corporation and ran the operation. Mitchell Flying Service is an Oklahoma corporation, located in Poteau, while James Mitchell is an Arkansas resident, residing in Fort Smith. In May 1972 Mitchell Flying Service acquired possession of the airplane in question, a Cessna 150, from the Cessna Aircraft Company, apparently under a conditional sale agreement that would become complete three months later. The financing was

handled through Cessna Finance Company. Cessna Finance filed its "Chattel Mortgage (Security Agreement)" form with the FAA Aircraft Registry in Oklahoma City on June 28, 1972.

Around this time in 1972, James Mitchell bought Mitchell Flying Service from the Holts. As part of the deal, Mitchell Flying Service and James Mitchell individually co-signed a promissory note in the principal amount of $65,000, dated July 1, 1972. Mitchell Flying Service executed a security agreement in favor of the Holts dated July 3, 1972, covering the "inventory of 4–1–72," which was set out, and all like after-acquired property. We are not told whether that security agreement was filed with the Federal Aviation Administration, but on October 15, 1974, Mitchell Flying Service executed an "Aircraft Chattel Mortgage" covering the airplane in question in favor of W. L. Holt, and this latter instrument was recorded in the FAA Registry on December 3, 1974. It was understood by Holt and Mitchell, and Holt signed a letter to the effect, that the mortgages Holt held on this and one other airplane were "second lien mortgages . . . subject to first mortgages to the Cessna Finance Co."

Poteau State Bank entered the picture, as far as this airplane is concerned, in 1975. Mitchell Flying Service borrowed some money from the Bank on March 19, 1975, and on that date Mitchell Flying Service signed a security agreement covering the airplane in question. With part of the proceeds of the loan the remaining indebtedness to Cessna Finance was paid; the rest of the proceeds were deposited. Cessna Finance released its security interest on April 1, 1975. The release was recorded on April 14, 1975, and after that Cessna Finance was out of the picture. The Bank then filed an "Aircraft Chattel Mortgage" with the FAA on April 18, 1975.

Mitchell Flying Service was unable to meet its obligations, so the Holts filed suit against Mitchell Flying Service and James Mitchell on the $65,000 note and the security agreement in the United States District Court for the Eastern District of Oklahoma. In that action the court dismissed Mitchell Flying Service as a defendant for lack of diversity (the Holts are Oklahoma residents; Mitchell is an Arkansas resident, while Mitchell Flying Service is an Oklahoma corporation). Then on October 8, 1975, pursuant to a settlement between the parties, Judge Fred Daugherty rendered judgment for the Holts against James Mitchell for $63,626.56, plus interest and an attorney's fee.

This action was filed by the Bank on October 15, 1975. The Bank sought a money judgment from Mitchell Flying Service and possession of the airplane, and the Holts were joined as defendants because they might "be claiming some right, title and interest in and to said aircraft." The Holts answered by general denial and cross petitioned against Mitchell Flying Service and the Bank. Mitchell Flying Service never answered or appeared. On April 22, 1976, the Bank took a money judgment by default against Mitchell Flying Service. On June 29, 1976, the Holts also took a default judgment against Mitchell Flying Service, for $65,000, interest, costs, and attorney's fees. In the journal entries of both default judgments, the trial court reserved judgment on the issue of the possession of the airplane.

The latter issue was tried to the court on July 8, 1976, and judgment was entered on August 13, 1976. In the journal entry the trial court made the following findings:

The Court takes judicial notice of the fact that the defendant, William L. Holt, did in fact perfect a chattel mortgage prior to that of plaintiff herein, but that said chattel mortgage purports to represent a certain promissory note in the amount of $30,000.00, which the Court finds to be nonexistent. Therefore, the mortgage being evidence of a debt only and there being no indebtedness in the amount set forth on the mortgage, there could be no priority over that of plaintiff. The Court further finds that the note sued upon by defendant William L. Holt and Billie Jo Holt is identical to that sued upon in the United States District Court for the East-

ern District of Oklahoma, upon which judgment has been rendered thereon and execution levied upon. Defendants are therefore estopped by virtue of its earlier judgment.

The court also found "that the uncontroverted testimony of defendant William L. Holt reflects that said note upon which he relies was in fact assigned, sold and transferred unto the plaintiff, Poteau State Bank, on the 31st day of December, 1973." In that regard we note that the record reflects testimony of Mr. Holt to the effect that he later bought the note *back* from the Bank. No officer or employee of the Bank testified, but in Mr. Mitchell's testimony he also indicated that Holt bought the note back.

The Holts filed a motion for a new trial, which was heard on October 1, 1976, and overruled on November 18, 1976. The Holts now bring this appeal.

### Priority in the Collateral

■ For their first proposition the Holts contend that the trial court erred in holding that since there was "no indebtedness in the amount set forth on the mortgage, there could be no priority over that of plaintiff [Bank]." It is undisputed, and the Holts admit, that there never was a note for $30,000. It is likewise undisputed, however, that Mitchell Flying Service *did* owe the Holts a debt of some $65,000. And the trial court found, as we have seen, "that the defendant, William L. Holt, did in fact perfect a chattel mortgage prior to that of plaintiff [Bank] herein . . . ." The critical issue, then, is the effect of the language in the October 1974 "Aircraft Chattel Mortgage," which was filed in December 1974.

We begin by observing that the "Aircraft Chattel Mortgage" form, the instrument used by Holt and Mitchell Flying Service to record the security interest on this airplane, is a standard form supplied by the FAA which was in common use at the time. The Bank used the same form to record its security interest. The form contains blanks for all of the information necessary to make the instrument eligible for recording in the FAA Aircraft Registry, but it also contains blanks for information that is *not* necessary for recording. With the information included by Holt and Mitchell Flying Service in their October 1974 instrument inserted in brackets, the form contains the following language:

WITNESSETH: That the said mortgagor, being justly indebted to the said mortgagee in the sum of [Thirty Thousand] dollars ([$30,000.00]), *as evidenced by a promissory note referred to herein,* grants, bargains, sells, and mortgages to the said mortgagee, his heirs, administrators, successors, and assigns, the following described aircraft: . . . . [Emphasis added.]

Following this are language and blanks for a specific description of the airplane, a specific description of the terms of a promissory note, and areas for other agreements, other liens, and special provisions. Holt and Mitchell Flying Service described the aircraft, but through the rest of the provisions wrote "NA" (not applicable) in large letters.

What we must decide in this case is the effect of a misdescription in the filed instrument of the obligation secured. On the facts before us in this case, we hold that the erroneous description had no effect. Holt and Mitchell Flying Service wrote "NA" across the part of the form designed to be used to describe a promissory note, yet they neglected to strike the words "as evidenced by a promissory note referred to herein," which appear on the form just after the space for the amount of the debt and just before the language of grant. Holt testified that the figure $30,000 was put on the instrument because neither he nor James Mitchell knew how much to put on it, since some payments had been made to reduce the $65,000 indebtedness, though they knew that the debt remained more than $30,000 and that $30,000 would cover the value of the airplane. James Mitchell testified that they wrote "NA" on the form because he was not sure that a second lien could be filed on an airplane. It is clear that they

intended the airplane to secure the original indebtedness; no new value was given. At trial James Mitchell's uncontradicted testimony was that the Bank, through a Mr. Gunn, had actual knowledge of the debt to Holt and of Holt's prior security interest in the airplane.

When a party has actual knowledge of a prior security interest and its terms, irregularities in the instruments filed, so long as they are not such as to defeat perfection, are not misleading to that party and do not affect that party's priority. *See First State Bank v. United Dollar Stores*, Okl., 571 P.2d 444, 447–48. "[T]he spirit of the Uniform Commercial Code is to relax the harsh strict construction of prior recording and filing statutes and cases. Non-misleading, inconsequential errors will no longer invalidate the agreement of the parties. If under any principle of law or equity the validity of the security can be maintained it should be done to effectuate the will of the parties where third parties are not prejudiced." *In re Landolina*, 7 U.C.C.Rep.Serv. 76, 78–79 (D.Conn.1967) (Referee in Bankruptcy). The trial court correctly held that Holt had properly perfected a security interest prior to that of the Bank. We hold that he was also entitled to priority over the Bank.

### Estoppel by Judgment

■ For their second proposition the Holts contend that the trial court erred in holding that they are estopped by the federal court judgment against James Mitchell. We agree.

In *Boy Scouts of America, Inc. v. Thompson*, Okl., 380 P.2d 705, 706, the Oklahoma Supreme Court said this about estoppel by judgment in the first paragraph of the syllabus:

A right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies, although the subsequent suit is on a different cause of action; and a plea setting up the former adjudication of a fact, right or question distinctly put in issue between the same parties or their privies is not a plea in bar, but a plea of estoppel by judgment. Identity of causes of action is not a necessary element in the plea of estoppel by judgment, but it is necessary that the point upon which the plea of estoppel by judgment is based is in issue in the latter case and was in issue and decided in the former.

Three points come into play here: (1) the debt owed by Mitchell Flying Service to the Holts, (2) the Holts' right to possession of the airplane against Mitchell Flying Service, and (3) the Holts' right to possession of the airplane against the Bank. Only the first point was involved in the federal court case, so there is no estoppel by judgment as to the other two. *Id.* As to the first point, the Holts are not taking any different position here than they did in federal court, so they are not barred from raising the issue here. *Id.* In addition, the apparent fact that James Mitchell is the sole shareholder of Mitchell Flying Service would not in this case cause the judgment against Mitchell to bar an action against Mitchell Flying Service, because corporations are separate entities from their shareholders and none of the grounds sufficient to "pierce the corporate veil" have been raised. *Hulme v. Springfield Life Insurance Co.*, Okl., 565 P.2d 666, 670; *Mainord v. Sharp*, Okl.App., 569 P.2d 546, 548. We hold that the doctrine of estoppel by judgment does not work against the Holts in any manner here.

The judgment of the trial court is reversed. The Holts are entitled to possession of this airplane. According to their representation in their brief, however, they do not know what has become of the airplane; the record does not tell us either. The cause is remanded to the trial court with directions to enter judgment for the Holts and, on motion of the Holts, to take whatever further steps are necessary to protect their rights.

REVERSED AND REMANDED WITH DIRECTIONS.

ROMANG, P. J., and REYNOLDS, J., concur.