658 P.2d 470 (1983)
In re Larry Gene BOYD and Mera Beth Boyd, Debtors.
John B. JARBOE, Trustee, Plaintiff,
v.
The FIRST NATIONAL BANK OF PRYOR, Defendant.
No. 59061.
Supreme Court of Oklahoma.
January 25, 1983.
John B. Jarboe and Sidney K. Swinson, Tulsa, for plaintiff.
*471 J. Michael Jacobs, Pryor, for defendant.
Laura Nan Pringle, Oklahoma City, for amicus curiae, Oklahoma Bankers Ass'n.
LAVENDER, Justice:
The Bankruptcy Division of the United States District Court for the Northern District of Oklahoma has certified the following two questions of law pursuant to the Uniform Certification of Questions of Law Act, 20 O.S. 1981, § 1601, et seq.:
(1) Whether the One Thousand Two Hundred Fifty Dollar ($1,250.00) payment made by Allstate Insurance Company to the debtors is proceeds as defined in 12A O.S. 1971, § 9-306 of the Oklahoma Uniform Commercial Code and subject to the defendant's security interest.
(2) In the event the One Thousand Two Hundred Fifty Dollar ($1,250.00) payment made by Allstate Insurance Company to the debtors is determined to be proceeds, whether the defendant had a properly perfected security interest in those proceeds on September 16, 1981, the date the debtors filed bankruptcy.
The certified questions are accompanied by a stipulation of facts between the parties which, insofar as pertinent to the first question, shows:
On April 13, 1981, debtors entered into and executed a promissory note in the principal sum of $1,718.05 together with a security agreement covering a 1971 Volkswagen in favor of defendant bank. Included in the security agreement was a provision which stated, "proceeds of collateral are also covered; however, such shall not be construed to mean that the secured party consents to any sale of such collateral." On April 14, 1981, defendant filed a lien entry form with the Oklahoma Tax Commission pursuant to 47 O.S. 1981, § 23.2b, perfecting its secured interest in the vehicle.
On September 2, 1981, one or both debtors were involved in a collision with a third party who maintained liability insurance coverage with Allstate Insurance Company. Debtors and Allstate settled debtors' claim for automobile damage for the sum of $1,250.00. Before the settlement sum was paid by Allstate, debtors filed their petition for relief under Chapter 7 of the United States Bankruptcy Code on September 16, 1981. Allstate paid the settlement sum to the Trustee in Bankruptcy, who in turn released the money to defendant bank pending the outcome of these proceedings. Ownership of the fund turns on the answer to the two certified questions.
We first consider whether the settlement fund paid by a third party's automobile liability insurance carrier to debtors as a result of an automobile collision between third party and the Volkswagen which was the subject of a security interest in defendant bank and which was driven by one of the debtors constitutes "proceeds" within the meaning and coverage of 12A O.S. 1971, § 9-306(1), thus establishing a prior right to the settlement fund in defendant.
Section 12A O.S. 1971, § 9-306(1), in effect at the time of the automobile collision, insofar as pertinent, provides: " `Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of."
Effective October 19, 1981, and after the collision, § 9-306(1) was amended by adding: "Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement."
Several courts have considered whether recovery under debtor's insurance coverage for loss of or damage to personal property subject to a security interest under § 9-306(1) as constituted prior to the October 19, 1981, amendment thereof may properly be "proceeds," where the security agreement does not require the debtor to insure the personal property. While these cases are distinguishable from the case before us in that the insurer made payment under debtor's policy where in the case at bar it is the third party's insurer who makes payment to debtor under third party's insurance policy, those cases are illuminating in their consideration of the issue before us.
*472 Quigley v. Caron, 247 A.2d 94 (Me. 1968) involved the right to proceeds of fire insurance arising from destruction of debtor's crop of potatoes, which crop was subject to a security interest agreement where debtor obtained the insurance, but was not required to do so by the security agreement. The Maine Supreme Court said (p. 96):
"We are satisfied that payments (or the right thereto) for fire losses often referred to as `insurance proceeds,' are not `proceeds' of the collateral security, that is of the potatoes, as that term is defined in Section 9-306(1) ... . The insurance monies plainly do not come from a sale or exchange or collection of the security.
"Were the potatoes `otherwise disposed of'? We answer in the negative. In our view, the Code covers voluntary disposal and not a change from destruction by fire. (Emphasis supplied.)
* * * * * *
"The Rhode Island Court has reached a like result. In holding that insurance payments for losses are not `proceeds' under Section 9-306(1), the Court said: `Insurance moneys or proceeds flow from the insurance contract and not from the property insured.' Again, in passing upon the `or otherwise disposed of' clause, the Court said of a tractor demolished in an accident, `This involuntary conversion of the tractor is not a disposition within the meaning of [Section 9-306(1)].' Universal C.I.T. Credit Corp. v. Prudential Invest. Corp. (R.I.) [101 R.I. 287] 222 A.2d 571 (1966). See also note on Secured Transactions 65 Mich.Law Review 1514."
In accord, see Peoples State Bank v. Marlette Coach Company (C.A. 10th 1964) 336 F.2d 3; Bank of New York v. Margiotta v. Sajoren, 99 Misc.2d 423, 416 N.Y.S.2d 493 (1979); Hoffman v. Snack, 37 D & C 2d 145 (Pa. 1964).
In Welch v. Montgomery, 201 Okl. 289, 205 P.2d 288, 9 A.L.R.2d 294 (1949), we held that the holder of a judgment which is a lien upon real estate owned by the judgment debtor has no interest in the proceeds of a fire loss recovery by the judgment debtor under an insurance policy maintained on the property by judgment debtor where judgment debtor is not required to maintain fire insurance for the benefit of the holder of the judgment lien. Therein, we said:
"The rule so stated is universally recognized and applied. In Re San Joaquin Valley Packing Co., 9 Cir., 295 F. 311, at page 313, the following is given as the basis of the rule: `... The reason of the rule is that as between the insurer and the insured, a policy of fire insurance is purely a matter of personal contract. It does not attach to the insured property, nor does it run with the title thereto. It is in itself the measure of the rights of all persons under it, and its provisions must govern in determining who are the beneficiaries. Said the court in Columbia Ins. Co. v. Lawrence, 10 Pet. ([35] U.S.) 507, 9 L.Ed. 512:
`We know of no principle of law or of equity, by which a mortgagee has a right to claim the benefit of a policy underwritten for the mortgagor on the mortgaged property, in case of a loss by fire ... . It is strictly a personal contract for the benefit of the mortgagor, to which the mortgagee has no more title than any other creditor.'"
Several courts have considered the issue presented in Quigley v. Caron, supra, wherein the debtor was required by the terms of the security agreement to keep the secured property insured.
In Brown v. First National Bank of Dewey (C.A. 10th 1980) 617 F.2d 581, the Court undertook to foretell the determination by the Oklahoma Supreme Court in construing the pre-amendment version of § 9-306 of Oklahoma's Commercial Code. The Court said (p. 584):
"The Act is to be liberally construed to effectuate its purposes, Okla. Stat. Ann. tit. 12A, § 1-102(1) (West 1963), and section 9-306 obviously was designed to protect a secured creditor's interest in collateral through permutations and substitutions. It seems to us antithetical to the purpose of the UCC to deny priority to a creditor who secured the agreement of *473 the debtor to insure against involuntary loss of the collateral. Thus, we hold that proceeds from casualty insurance on collateral are proceeds of collateral, at least when the parties intended that the casualty insurance redound to the secured creditor's benefit. (Citations omitted.) (Emphasis supplied.)
"In making this determination, we are influenced also by the fact that in 1972 the Commissioners on Uniform State Laws amended section 9-306(1) to provide that `(i)nsurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than party to the security agreement.' Commentary accompanying the 1972 version states the purpose of the new sentence is to `make[] clear that insurance proceeds from casualty loss of collateral are proceeds within the meaning of this section.' The Oklahoma legislature has not adopted the 1972 version, but we do not construe its failure to act as acceptance of the contrary view. We believe the Oklahoma Supreme Court would view the 1972 amendment as giving some evidence of the original drafter's intent to include proceeds from insurance on collateral within the scope of section 9-306(1), as did Paskow v. Calvert Fire Ins. Co., 579 F.2d 949, 954 (5th Cir.1978), and PPG Inds., Inc. v. Hartford Fire Ins. Co., 531 F.2d 58, 61 (2nd Cir.1976)."
To the cases cited in Brown, supra, in support of the views therein expressed, may be added Ettinger v. Central Penn National Bank (C.A. 3rd 1980) 634 F.2d 120, decided since Brown not only for the proposition that under § 9-306(1) insurance proceeds from loss of debtor's property pursuant to an insurance policy required by the security agreement to be maintained by debtor constitute "proceeds," but in addition, that the amendment to § 9-306(1) and the official reasons given therefor "imply an intent to make explicit what had been intended from the beginning."
However, in considering the decision in Brown, supra, as applied to the case before us wherein the insurance proceeds resulted from a settlement payment derived from a tort claim by debtor as a result of tortious damage to the property on which the claimant secured party has a security interest, we take notice of footnote 7 to the opinion in PPG Industries, Inc., supra, cited in Brown:
"A different result might obtain where the debtor in the ordinary course of business takes out an insurance policy for his own benefit. If the insurance policy is acquired in this manner and for this purpose, there is no reason why the loss proceeds should be made available to a creditor with a security interest in a debtor's inventory. By allowing him to recover the proceeds in such a case, the secured creditor would be given a windfall simply because of the happenstance existence of an insurance policy ... ."
As we view the case before us in light of the foregoing authorities, the proceeds arising out of debtor's claim in tort against a third party's negligent damage to the Volkswagen which was subject to a security interest in defendant bank can only be considered to be "proceeds" if the amendment to § 9-306(1) applies.[1]
While it might be inferred that the amendment to the UCC together with the accompanying official reasons given therefore by the Commissioners on Uniform *474 State Laws merely stated what the Commissioners on Uniform State Laws intended the section to mean prior to the amendment, the conclusion is inescapable that its subjective intent was not expressed in the pre-amendment language used. We are strongly persuaded by those cases which hold that prior to the amendment, insurance proceeds recovered by the debtor under debtor's insurance coverage which was not required by the security agreement do not constitute "proceeds."
We therefore hold that monies recovered by debtor from a third party as a result of debtor's claim in tort against the third party are not "proceeds" under § 9-306(1) where the claim arose prior to the amendment of that section, and we answer the first certified question in the negative.
While our answer to the first certified question may be determinative of the issues presented by the certifying court, we nevertheless address the issues presented by the second question, for assistance to the certifying court in the event that it is not.
On April 14, 1981, defendant bank filed a lien entry with the Oklahoma Tax Commission pertaining to the Volkswagen automobile owned by debtors on the form prescribed by the Commission and relies solely upon such filing as sufficient to perfect its interest in the proceeds of said automobile damage settlement.
The pertinent part of 47 O.S. 1981, § 23.2b provides:
"... a security interest, as defined in Section 1-201 of Title 12A of the Oklahoma Statutes, in a vehicle as to which a certificate of title may be properly issued by the Tax Commission shall be perfected only when a lien entry form, which shall be in a form prescribed by the Commission, and the existing certificate of title, if any, or application for a certificate of title and manufacturer's certificate of origin containing the name and the address of the secured party and the date of the security agreement and the required fee are delivered to the Oklahoma Tax Commission or one of its motor license agents... . ."
The Oklahoma Commercial Code, 12A O.S. 1971, § 9-306(3),[2] insofar as pertinent, provides:
"(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless;
"(a) A filed financing statement covering the original collateral also covers proceeds; or
"(b) The security interest in the proceeds is perfected before the expiration of the ten day period." (Emphasis added.)
The form prescribed by the Oklahoma Tax Commission makes no provision for reference to "proceeds" of the collateral.
Thus, the question becomes, where creditor files a lien entry form with the Oklahoma Tax Commission on the form prescribed by the Commission, which form makes no provision for notice of a security interest in the proceeds of the collateral, must the creditor also comply with the provisions of the UCC in order to perfect a security interest in said "proceeds" where the security agreement includes proceeds.
We have heretofore held that where there are inconsistencies between the UCC and § 23.2b(a), the clear provision of the Title Statute controls. In Re Cook, Okl., 637 P.2d 588 (1981).
We have also held that the policy underlying the perfection and recordation of security interests under the UCC is to provide notice to interested parties. In Re Hembree, Okl., 635 P.2d 601 (1981); First State Bank, etc. v. United Dollar Stores, Okl., 571 P.2d 444 (1977). But the purpose of the UCC is served by notice of creditor's claim to some security interest in the collateral if it is sufficient to put interested parties on *475 inquiry as to the precise security interest claimed. First State Bank, etc. v. United Dollars Stores, supra; 25 O.S. 1981, § 13.
In AMF Tubescope Company v. Hatchel, Okl., 547 P.2d 374 (1976), we said (p. 379):
"Legislative intent will be presumed to have been for benefit of those affected, and not to their injury. The Legislature will not be presumed to have intended an absurd result, and a statute should be given a sensible construction, bearing in mind the evils intended to be avoided or the remedy afforded. (Citations omitted.) Statutes must be construed, if possible, so the whole may stand. (Citations omitted.)
"When two acts, or parts of acts, are susceptible of construction which will give effect to both without doing violence to either, this construction should be adopted in preference to one which leads to a conclusion that there is a conflict. (Citation omitted.) In Eason Oil Company v. Corporation Commission (Okl. 1975), 535 P.2d 283, in Syllabus 2 we stated:
`Legislative acts are to be construed in such manner as to reconcile different provisions and render them consistent and harmonious and give intelligent effect to each.'"
An obvious purpose for which 47 O.S. 1981, § 23.2b was enacted was to provide a central filing place through which notice is imparted with reference to licensed vehicles without requiring a search of the records of the various county clerks throughout the state to determine whether a security interest in a particular vehicle is outstanding. To require compliance with the filing requirements of both the UCC and the Title Statute in order to perfect a security interest in the proceeds of collateral would subvert in the purpose of the Title Statute, and would not serve the purpose of the UCC.
We therefore hold that where the creditor files a lien entry with the Oklahoma Tax Commission on the form prescribed by the Commission covering a vehicle covered by 47 O.S. 1981, § 23.2b, such filing perfects a security interest in the "proceeds" of the collateral, where the security agreement covering the property specifies that there shall be a security interest in the proceeds of the property. If it were assumed that the settlement monies are "proceeds," our answer to the second certified question would be in the affirmative.
BARNES, C.J., and IRWIN, HODGES, OPALA, HARGRAVE and WILSON, JJ., concur.
SIMMS, V.C.J., dissents.
DOOLIN, J., certified his disqualification.
NOTES
[1] Even if the language of the amendment were applicable, it is doubtful whether a different result would be produced. "Insurance payable by reason of loss or damage to the collateral..." set forth in the amendment would not be helpful to defendant bank's position. The settlement monies resulted from a tort claim by debtor against a third party. The fact that third party maintained a liability insurance policy for third party's benefit, and the insurer paid the claim, would not seem to make the settlement monies "insurance payable by reason of loss or damage to the collateral" where there is no contractual privity between debtor or secured party and the insurer. Whether debtor's tort claim damage is paid by third party, or third party's insurer, thus becomes immaterial. In either event, it is payment by the third party to debtor arising out of the claimed negligence of third party and not "insurance payable by reason of... damage to the collateral."
[2] 12A O.S. 1971, § 9-306(3) was amended, effective October 19, 1981, after defendant bank filed a lien entry form with the Oklahoma Tax Commission.