In re Linus John SABELKA and Doris Sabelka, Debtors.

Wesley B. HUISINGA, Plaintiff/Trustee,

v.

SECURITY BANK & TRUST COMPANY, Defendant.

Bankruptcy No. 83–02341.
Adv. No. 84–0054 W.

United States Bankruptcy Court,
N.D. Iowa.

Feb. 21, 1986.

Wesley Huisinga, Waterloo, Iowa, trustee in bankruptcy.

Richard Phillips, Decorah, Iowa, for Sec. Bank and Trust Co.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This matter was tried on stipulation as to the facts and memorandums of law submitted by the respective parties without the taking of any further testimony or evidence. The question at issue is whether the plaintiff trustee in bankruptcy can succeed to the debtor's rights to receive certain corn in storage under a federal agricultural program known as the Payment-In-Kind ("PIK") program free of any claim to the corn by the defendant Security Bank & Trust Company.

This Chapter 7 bankruptcy proceeding was filed by the debtor on December 20, 1983, at a time after the debtor had harvested his 1983 corn crop. At the beginning of the growing season the debtor had filed an application for entitlement under the newly-created PIK program which entitled a farmer to receive a certain number of bushels of a commodity that *would have*

*been* produced on PIK acres based upon past production records. In return, the farmer agrees to not plant the diverted acres and uses soil conservation techniques on his affected land.

At the end of the growing season the operator has several months within which to claim his PIK entitlements either from grain stored on his own property or stored in an elevator pursuant to federal regulations.

On March 4, 1983, the Agricultural Stabilization and Conservation Service ("ASCS") issued regulations governing the PIK program. 48 Fed.Reg. 9232 (1983) (codified at 7 CFR § 770.1–.6). The program is administered by the U.S. Department of Agricultural ("USDA") and its subsidiary agencies, including the Commodity Credit Corporation ("CCC") and the ASCS.

In the present case, the debtors made their applications for PIK entitlements in early 1983 under the new program and had their application approved for entitlements covering 5,294 bushels of corn. As the court understands the PIK program, the corn the debtors would be entitled to receive by virtue of their taking some of their land out of production could come from the corn actually grown by the debtors on the remainder of their land, subject to storage requirements under other CCC agricultural support programs, or could come from corn grown by the debtor in past years, or by other producers, and stored in CCC elevator facilities.

The stipulated facts submitted by the parties do not specifically set out the actual factual situation involved with regard to the debtor's operation in 1983. For present purposes, however, the court will assume that the "PIK corn" that the debtors were entitled to receive on the date of their bankruptcy filing was in fact corn produced on their own farm in 1983 and subject to storage requirements as indicated above.

The dispute between the trustee and the bank arises by virtue of the bank's claim that its secured financing of the debtor, which involves unpaid amounts far in excess of the value of the 5,294 bushels of corn here involved, give the bank rights valid even as against a trustee in bankruptcy.

In 1981 the bank filed a UCC–1 financing statement indicating that it covered the following types of property: "70 acres Corn growing or to be grown." The financing statement also included a description of the real estate involved in the growing of the crop. It contained an indication that "Products of Collateral are Covered." The financing statement does not include any reference to general intangibles as collateral. The financing statement was signed by the debtor but does not contain any express granting clause granting a security interest in the described collateral.

On July 27, 1983 the bank loaned the debtors substantial monies for their farm operation and took back promissory notes indicating that the note was secured by a separate security agreement and also by "Assignment of Approx. 5294 bu. PIK corn." Neither the promissory notes nor the separate security agreement include any description of the real estate upon which the corn was to be grown.

Since the UCC financing notice makes no reference to general intangibles, and since the security agreement itself did not grant an interest in general intangibles, the bank cannot sustain a claim to the corn in question on the basis of a lien valid against the "PIK entitlements" in the sense that such claim was sustained in a case involving general intangibles as the collateral in *Matter of Sunberg*, 35 B.R. 777 (Bk'y., S.D. Iowa, 1983), affirmed in *In re Sunberg*, 729 F.2d 561 (8th Cir.1984).

Instead, the bank contends that it has a perfected lien under Article 9 of the Uniform Commercial Code as attaching to the corn as goods or farm products by virtue of its financing documents. *Iowa Code* § 554.9101 *et seq.* The trustee counters that there is a fatal flaw in the bank's position under this contention since Iowa Code § 554.9203(1)(a) specifically requires a real estate description in a security agreement when growing crops or crops to be grown are the collateral. That section provides in part as follows:

554.9203 *Attachment and enforceability of security interests—proceeds, formal requisites.* (1) Subject to the provisions of [cross reference sections inapplicable here].... a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless (a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned....

■ The bank seeks to avoid the application of this statutory provision by contending that the description of the real estate included in the UCC–1 financing statement suffices to give the requisite real estate description. The trustee counters that this argument is unavailing in Iowa since the Iowa Supreme Court has followed the strict *American Card* ruling, *American Card v. H.M.H. Co.*, 97 R.I. 59, 196 A.2d 150 (1963), to the effect that a financing statement which does not contain an express granting clause establishing the security interest itself will not be legally effective to *create* the security in the collateral when such creation does not appear in a duly executed security agreement that does grant the security interest to the financing party. *See* In *Kaiser Aluminum and Chemical Sales, Inc., v. Hurst,* 176 N.W.2d 166 (1970). In the absence of citation by either party of any subsequent Iowa decision relaxing this strict rule, I conclude that the trustee is correct and the bank has failed to establish that its security interest *attached* to the corn as goods or farm products and therefore the notice filing by the UCC–1 form was ineffectual to perfect a valid and enforceable lien on that collateral. Cf. also *Matter of Permian Anchor Services, Inc.,* 649 F.2d 763 (10th Cir.1981).

■ The bank argues alternatively that it still can reach the corn in question, this time directly under the "PIK entitlements" route, by a separate assignment of the debtors' PIK rights which it received on a federal form signed and dated June 17, 1983, stating that the debtor assigned to the bank its rights to payment-in-kind under the program to the extent of 3,335 bushels of "the crop in storage on a farm which is pledged as collateral for a CCC price support loan" together with an additional 1,959 bushels of corn from "the crop from CCC inventory located in a warehouse designated by CCC." While the bank in its brief indicates this was a "pure assignment" the facts as stipulated indicate otherwise, i.e., this assignment was taken with the intent that it would serve as security for the unpaid financing debt from the bank and not on the basis that the bank could immediately demand the corn before there was any default on the debt being secured.

It is true that the federal regulations do contemplate and provide for assignment of PIK entitlements. *See* 7 CFR § 770.6 which states in part as follows:

(e) Assignments with respect to quantities of a commodity which can be received by a producer as payment in kind will be recognized by the Department only if such assignment is made on Form CCC–479, Assignment of Payment-In-Kind, executed by the assignor and assignee, and filed with the county committee.

(f) Except as provided in paragraph [e] of this section, any payment in kind or portion thereof which is due any person shall be made without regard to questions of title under State law, and without regard to any claim of lien against the commodity, or proceeds thereof, which may be asserted by any creditor.

These federal regulatory provisions do not help the bank in avoiding the requirements of the Iowa Uniform Commercial Code in establishing a valid security interest good as against a trustee in bankruptcy. As stated by the Eighth Circuit in its decision in *In re Sunberg,* 729 F.2d 561, 563 (8th Cir.1984), there is no federal preemption here:

These provisions merely govern the rights of parties claiming PIK benefits directly from the federal government.

They do not prevent one who is entitled to the benefits from pledging the benefits as security on loans properly made under state law. Simply because the government will refuse to deliver the benefits to an assignee not appearing on the proper federal forms does not mean that an assignor can totally disregard legal obligations to the assignee. Such "anti-assignment" provisions are intended to insulate the government as benefit provider from conflicting claims over payments, not to preempt state commercial law as between third parties. *See Segal v. Rochelle*, 382 U.S. 375, 384, 86 S.Ct. 511, 517, 15 L.Ed.2d 428 (1966); *In re Nivens, supra*, 22 B.R. [287] at 291 [ (Bkrtcy.Tex.1982) ]. Neither do we read anything in other PIK regulations to restrict program beneficiaries from voluntarily encumbering their PIK benefits.

■ Nothing daunted, the bank having struck out twice comes up the third time with the further contention that it *can* comply with Iowa Uniform Commercial Code requirements because the assignment in question "should be treated as bill of lading, warehouse receipt or other document of title which was in the possession of the bank at the time of bankruptcy." The bank argues this establishes a valid lien notwithstanding the defects in perfection and attachment by security agreement as set forth above. The bank cites §§ 554.-1205(15); 554.9302; and 554.9305 of the Iowa Code in this regard.

There are two factual problems with this last contention by the bank. First, Iowa Code § 554.1201(15) defines a document of title as a "document issued by or addressed to a bailee" and here even if the debtors could be considered "a bailee" for this purpose it is clear that they themselves had possession of only 3,335 bushels of corn in storage on their farm under the PIK program. The rest was in an elevator maintained by the CCC and there is no indication of any comparable document "issued" by the CCC with regard to the remainder of the corn. Further, it appears that the bank only had possession of the "Assignee's Copy" of the assignment document.

The original of this document was in the possession of the local ASCS office.

Passing by these factual problems for the moment, a more substantial obstacle to this contention by the bank is the full definition of "document of title" included in Iowa Code § 554.1201(15) as follows:

> (15) "Document of title" includes bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of goods, and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers. To be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass.

There is no evidence in the record before the court to indicate that the federal assignment form with regard to PIK entitlements is a document "which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers."

No case decision either in Iowa or any other jurisdiction has been cited construing these federal forms as constituting documents of title within the intendment of the Uniform Commercial Code. As indicated above, quoting from the Eighth Circuit's *Sunberg* opinion, these federal regulations and forms are designed primarily to protect the federal government in the administration of the farm program and are not intended to preempt local commercial law requirements.

In the absence of any clear evidence establishing that the use of the federal contract assignment forms are treated by farmers, lenders, and suppliers in the agricultural world as the equivalent of documents of title or warehouse receipts, I conclude that the trustee can as a matter of fact and law avoid any claim of lien or

ownership of the corn and/or PIK entitlements involved in this case under his lien and transfer avoidance powers as provided in § 544 of the Bankruptcy Code. For all that appears in this record the debtor farmers could exhibit to any potential creditors their PIK entitlement approvals without necessarily disclosing that the same had been assigned to the bank. It also has not been shown that such potential creditors would be under any statutory notice and duty to check with any particular agricultural agency as in effect "a recording office" to determine whether such assignment had in fact occurred.

I note finally, although neither party cited the same, that Iowa Code § 554.7201(2) does provide with regard to warehouse receipts that agricultural commodities stored "under a statute requiring a bond against withdrawal or a license for the issuance of receipts in the nature of warehouse receipts" has a like effect as a warehouse receipt even though issued by a person who is the owner of the goods and not a warehouseman. It may be that this section was not cited because of other requirements regarding warehouse receipts as provided in Article 7 of the Uniform Commercial Code which are inconsistent with the bank's position. It is also not clear to the court what this statutory provision means by reference to "a bond" or "a license" since there are apparently no Iowa cases construing this particular statutory provision. In the circumstances, as to this point, the court will entertain any motion for reconsideration that the bank may wish to file, provided the same is filed within ten days of the date of this opinion, and is supported by appropriate authorities indicating applicability of this latter statutory provision.

A separate final judgment shall be entered in favor of the plaintiff/trustee in bankruptcy in this adversary proceeding.