**FARMERS AND MERCHANTS NATIONAL BANK, FAIRVIEW, Oklahoma, Appellant,**

v.

**FAIRVIEW STATE BANK, FAIRVIEW, Oklahoma, Appellee.**

**No. 64337.**

Supreme Court of Oklahoma.

Nov. 22, 1988.

Curtis, McCue, Schoeppel & Hallren by James Schoeppel, Fairview, for appellant.

Gungoll, Jackson & Collins by Douglas L. Jackson, Enid, for appellee.

HODGES, Justice.

This appeal presents three issues: (1) Has federal law displaced the Oklahoma Uniform Commercial Code in governing the rights of creditors to Payment–In–Kind Diversion Program benefits? (2) Does a financing statement covering "growing crops ... and proceeds thereof" reasonably identify Payment–In–Kind Diversion Program benefits as proceeds? (3) Did appellee's security interest in Payment–In–Kind Diversion Program benefits, as proceeds of growing crop collateral, remain continuously perfected? We answer the first question in the negative and the remaining questions in the affirmative.

On January 7, 1983, appellee, Fairview State Bank (FSB), executed a security agreement with J.C. Graham and Elizabeth Sue Graham (debtors) covering portions of

their 1983 Major County wheat crops.[1] FSB perfected its security interest by filing a financing statement covering "growing crops ... and proceeds thereof." Appellant, Farmers and Merchants National Bank (F & M), perfected a security interest in other portions of the Grahams' Major County wheat crops.

J.C. Graham chose not to harvest any of his 1983 growing wheat in order to participate in the United States Department of Agriculture's (USDA) Payment–In–Kind Diversion Program (PIK). On April 29, 1983, Graham assigned his rights to PIK benefits from all of the Major County wheat crops to F & M. Of the 11,593 bushels of PIK wheat, 6,240 bushels were benefits for not harvesting the crops in which FSB held a perfected security interest. F & M received the entire 11,593 bushels which it sold. No portion of the PIK wheat or the money from its sale was forwarded to FSB.

On April 10, 1985, the District Court of Major County held that 6,240 bushels of the PIK wheat were proceeds of the growing crops in which FSB held a perfected security interest. F & M was found to have converted this portion of the PIK benefits. Judgment was entered for FSB and F & M brought this appeal.

## I.

F & M urges that article 9 of the Oklahoma Uniform Commercial Code (UCC)[2] does not apply to the Grahams' assignment of PIK benefits to F & M. Article 9 does not apply to certain excluded transactions. Section 9–104 provides in part:

This article does not apply:
 (a) to a security interest subject to any statute of the United States to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property; or

. . . .

 (e) to a transfer by a government or governmental subdivision or agency;

. . . .

F & M claims these two provisions exclude the assignment of PIK benefits from UCC coverage and allowed F & M to take the PIK wheat free of any security interest arising under state law. Neither of these exclusions, however, applies to the instant transaction.

Comment 5 to section 9–104 explains that section 9–104(e) excludes from UCC coverage

[c]ertain governmental borrowings [which] include collateral in the form of assignments of water, electricity or sewer charges, rents on dormitories or industrial buildings, tools, etc. Since these assignments are usually governed by special provisions of law, these governmental transfers are excluded from this Article.

Because no government borrowing occurred, the provision is clearly inapplicable.

F & M also maintains that the exclusionary language of section 9–104(a) applies because federal law governs the rights of the parties. The Code of Federal Regulations provision, in effect at the time, is cited in support of this argument:

[A]ny payment in kind or portion thereof which is due any person shall be made without regard to questions of title under State law, and without regard to any claim of lien against the commodity, or proceeds thereof, which may be asserted by any creditor.[3]

No cases are cited by F & M to support its theory that federal law rather than the UCC applies to determine a creditor's right to PIK benefits. However, cases addressing the issue have uniformly rejected this claim holding that government programs such as PIK do not destroy a valid security

---

1. The Grahams' 1983 Blaine County wheat crops were the subject of litigation in the companion case to the present action, *Farmers & Merchants Nat'l Bank v. Sooner Coop., Inc.*, 766 P.2d 325 (Okla.1988).

2. Okla.Stat. tit. 12A, §§ 9–101 to 9–507 (1981). All UCC references are to the Oklahoma provisions found in title 12A.

3. 7 C.F.R. § 770.6(f) (1984).

interest.[4] Referring specifically to the cited regulation, the Bankruptcy Court for the District of Colorado held:

> This regulation clearly is intended to promote the administrative convenience of the government agency disbursing the benefits. It cannot have been intended to void liens which are otherwise valid under state and federal bankruptcy laws.[5]

We agree with the courts that have decided the issue and hold that the UCC governs the rights of creditors to PIK benefits. The federal regulation merely articulated the federal government's intent to pay the farmer notwithstanding a security interest in the PIK benefits held by a third party creditor.

## II.

■ Next, F & M claims that FSB's financing statement covering "growing crops ... and proceeds thereof" did not adequately describe the collateral so that a security interest continued in the PIK benefits as proceeds of that collateral. Comment 2 to section 9–402 explains that, under the UCC system of notice filing, only a simple notice is required to indicate that a secured party may have a security interest in the described collateral and that further inquiry will be necessary to disclose the complete state of affairs.

■ Section 9–402(1) sets out the formal requisites of a financing statement.[6] The requirements include a description of collateral by type or item. Section 9–110 provides that a description of collateral is sufficient if it "reasonably identifies what is described." The test of "reasonably identifies" is whether third parties could determine that the property described in the financing statement was subject to a security interest.[7]

F & M urges that the financing statement's description of collateral as "growing crops" did not give adequate notice of FSB's claim to PIK benefits. We have held that PIK benefits constitute proceeds of "growing crops" collateral.[8] As pro-

---

**4.** *In re Sunberg,* 729 F.2d 561 (1984); *First Mich. Bank v. Van Rhee,* 681 F.Supp. 1264 (W.D.Mich. 1987); *In re George,* 85 B.R. 133 (Bankr.D.Kan. 1988); *In re Harvie,* 84 B.R. 197 (Bankr.D.Colo. 1988); *In re Heims,* 65 B.R. 112 (Bankr.N.D. Iowa 1986); *In re Sabelka,* 57 B.R. 972 (Bankr. N.D.Iowa 1986); *In re Kruse,* 35 B.R. 958 (Bankr.D.Kan.1983); *In re Lee,* 35 B.R. 663 (Bankr.N.D.Ohio 1983); *In re Preisser,* 33 B.R. 65 (Bankr.D.Colo.1983). The same rationale has been applied to wool incentive payments. *See In re Patsantaras Land & Livestock Co.,* 60 B.R. 24 (Bankr.D.Colo.1986); *In re Mahleres,* 53 B.R. 86 (Bankr.D.Colo.1985).

**5.** *Preisser,* 33 B.R. at 67.

**6.** Section 9–402(1) requires that a financing statement contain the signature of the debtor, addresses of both parties and a description of the collateral by type or item. In addition, a financing statement covering growing crops must also contain a description of the lands concerned. FSB's financing statement met these requirements.

**7.** *In re R.W. Southwestern, Inc,* 23 B.R. 252, 257 (Bankr.W.D.Okla.1982) (citing *First Nat'l Bank v. Calvin Pickle Co.,* 516 P.2d 265, 267 (Okla. 1973)).

**8.** This issue was decided in the companion case to the present action, *Farmers & Merchants Nat'l*

*Bank v. Sooner Coop., Inc.,* 766 P.2d 325 (Okla. 1988). F & M raises one point that was not addressed by the companion case arguing that *In re Boyd,* 658 P.2d 470 (Okla.1983), is analogous to the present facts.

The *Boyd* decision held that monies received from a third party by a debtor, as a result of his tort claim settlement with the third party's insurer, were not proceeds of collateral within the meaning of section 9–306(1). The claim arose prior to the amendment of section 9–306(1), in 1981, to include as proceeds "insurance payable by reason of loss or damage to collateral."

F & M interprets *Boyd* as mandating a rejection of the conclusion that PIK benefits are proceeds of crop collateral because agricultural entitlements are not specifically mentioned in the UCC and because no reference to entitlements was made in the security agreement or financing statement. Such a narrow definition of proceeds is not consistent with a purposeful interpretation of the UCC and does not accurately describe the holding in *Boyd.*

Even if the amended version of section 9–306(1) had been applied, the result in *Boyd* would have been the same. As the Court noted:

> Even if the language of the amendment were applicable, it is doubtful whether a different result would be produced. "Insurance payable by reason of loss or damage to the collateral ..." set forth in the amendment would not be helpful to defendant bank's position. The settlement monies resulted from a

ceeds, a security interest automatically continued in the PIK benefits.[9]

It is not necessary for a financing statement to predict the form in which the proceeds of collateral will appear. Proceeds are often in the form of cash, equipment or goods not forseeable to the secured creditor. All that is required of a financing statement is "notice sufficient to place the inquiring party on guard to further inquiry."[10] This is achieved through an adequate description of the collateral in the financing statement, not by requiring a creditor to list every possible form that proceeds of collateral might take.

### III.

 The remaining question is whether FSB's security interest was continuously perfected in the PIK benefits as proceeds of a portion of the Grahams' 1983 Major County wheat crops. F & M points to section 9–306(3) which provides that a security interest in proceeds is continuously perfected when a security interest was perfected in the original collateral. The interest becomes unperfected, however, ten days after the debtor receives the proceeds unless the creditor reperfects the interest by taking one of the steps listed in section 9–306(3). This section does not apply to the instant facts because the debtors never received the proceeds. F & M received the benefits from the federal government, not from the Grahams.

FSB held a perfected security interest in the collateral and its proceeds when the Grahams assigned the PIK benefits. F & M took the benefits subject to FSB's perfected security interest. FSB's filed financing statement provided F & M with knowledge of FSB's possible security interest and placed a duty on F & M to inquire into FSB's rights in the PIK benefits as proceeds of the collateral.

F & M took assignment of PIK benefits that were proceeds in which FSB held a perfected security interest. F & M's refusal to remit to FSB that a portion of the proceeds in which FSB held a perfected security interest was "a wrongful assumption of rights of another to personal property" and thus constituted conversion.[11] The judgment of the trial court is AFFIRMED.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, OPALA, ALMA WILSON and SUMMERS, JJ., concur.

SIMMS and KAUGER, JJ., concur in part, dissent in part.

tort claim by debtor against a third party. The fact that third party maintained a liability insurance policy for third party's benefit, and the insurer paid the claim, would not seem to make the settlement monies "insurance payable by reason of loss or damage to the collateral" where there is no contractual privity between debtor or secured party and the insurer. Whether debtor's tort claim damage is paid by third party, or third party's insurer, thus becomes immaterial. In either event, it is payment by the third party to debtor arising out of the claimed negligence of third party and not "insurance payable by reason of ... damage to the collateral."
658 P.2d at 473 n. 1. The *Boyd* decision required only that the definition of proceeds be satisfied. It did not mandate the narrow and literal definition of proceeds that F & M proposes.

9. Section 9–306(2) provides
 Except where this article otherwise provides, a security interest continues in collateral, notwithstanding sale, exchange or other disposition thereof, unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

10. *Consolidated Equip. Sales v. First Bank & Trust Co.*, 627 P.2d 432, 436 (Okla.1981).

11. *Davidson v. First Bank & Trust Co.*, 609 P.2d 1259, 1261 (Okla.1976).