**222 A.2d 571.**

UNIVERSAL C.I.T. CREDIT CORPORATION *vs.* PRUDENTIAL INVESTMENT CORPORATION *et al.*

AUGUST 25, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a bill of interpleader wherein the respondents Prudential Investment Corporation and United Truck and Bus Service Company each claim certain proceeds of an insurance policy which had been issued on a certain motor vehicle, to wit, a 1964 Diamond T tractor.[1] The complainant was the loss payee on the insurance policy. Its claim having been satisfied, it has deposited in the registry of the superior court the balance of the insurance proceeds. The cause has been certified to us pursuant to G. L. 1956, §9-24-25, as amended, on an agreed statement of facts submitted jointly by both respondents.

The pertinent facts are as follows: On or about March 7, 1964, Eugene Tourtellot (hereinafter called the debtor) of Scituate, Rhode Island, executed with respondent Prudential Investment Corporation (hereinafter called Prudential) a security agreement, a promissory note and a financing statement under the appropriate provisions of the uniform commercial code as set forth in G. L. 1956, title 6A. These documents gave Prudential a security interest in four pieces of automotive equipment owned by the debtor, one of which was a 1961 International tractor.

---

[1] The word tractor as used herein describes a motor truck to which is attached a freight trailer. Together they form a trucking rig with the tractor furnishing the power which propels the unit over the highway.

On the face of the financing statement it is designated that the "Proceeds of Collateral are also covered." The financing statement was recorded pursuant to law in the office of the secretary of state on March 11, 1964.

At the time of the filing of this document there was on record in the secretary of state's office a financing statement wherein the debtor had given a security interest in the same 1961 International tractor to Mack Financial Corporation (hereinafter called Mack). The financing statement, however, did not designate that "Proceeds of Collateral are also covered." It is agreed by respondents that Mack's security interest was prior to that of Prudential.

On June 8, 1964, the debtor purchased from respondent United Truck and Bus Service Company (hereinafter called United) a new 1964 Diamond T tractor for the sum of $17,300. As part payment of the purchase price the debtor traded in the 1961 International and received as an allowance therefor the sum of $6,300. At this time United had no knowledge of the two outstanding security interests in the 1961 tractor. The balance of the purchase price was financed by a conditional sales contract which was assigned to complainant Universal C.I.T. Credit Corporation (hereinafter called C.I.T.) for the sum of $15,190.92. This figure represented the balance of the purchase price together with financing and insurance charges. C.I.T. perfected its security interest by filing a financing statement with the secretary of state.

Collision insurance was placed on the 1964 Diamond T in an amount equal to the "actual cash value of the vehicle at the time of the loss, if any * * *." The policy listed C.I.T. as loss payee.

On or about August 29, 1964, the debtor was involved in an accident and the 1964 Diamond T was completely demolished. It had only an undetermined salvage value.

As a result thereof, the insurance carrier some months later paid C.I.T. $15,494.25. This represented the value of the tractor under the terms of the insurance policy.

Sometime between August 29 and September 8, 1964, Mack informed United of its security interest in the 1961 International. United summoned the debtor to its office and he acknowledged Mack's outstanding security interest in the vehicle. He did not mention Prudential's interest and at United's insistence made an assignment to it of his interest to the extent of $6,300 in the insurance proceeds covering the loss. This instrument was dated September 8, 1964, and a copy thereof was received by the insurance carrier on September 16, 1964.

In October 1964, Prudential discovered that the debtor had traded in the International and summoned him to its office. He told Prudential that he had traded the International for the Diamond T and had borrowed the money from C.I.T. to complete the purchase. He thereupon executed a new financing statement covering the 1964 Diamond T which was duly recorded. This instrument also covered the proceeds of the collateral. He did not, however, tell Prudential that he had assigned his interest in the insurance proceeds to United nor did he tell Prudential that the 1964 tractor was in fact a complete wreck.

On October 28, 1964, pursuant to Mack's demand, United surrendered possession of the 1961 International.

It was in early November 1964 that respondents became aware of each other's interest in the balance of the insurance policy. C.I.T., having satisfied its claim of $11,306.14, instituted the present proceedings and deposited the balance of the insurance moneys in the registry of the superior court.

The respondents have, as a result of their framing of the agreed statement of facts, submitted for our determina-

tion certain issues. In brief and succinct terms they are as follows:

> 1. Did the security agreement between debtor and Prudential dated March 7, 1964, create such a continuing security interest that it can be traced to and embrace the moneys paid by the insurance carrier as a result of the demolition of the 1964 Diamond T tractor?
>
> 2. Does the unrecorded assignment of the insurance proceeds take precedence over the security interests of Prudential, one of which arose prior to the assignment and one of which arose after the assignment?

For the reasons which appear hereafter we answer the first question in the negative and the second question in the affirmative.

The definition of the term "Proceeds" as used in the uniform commercial code is found in §6A-9-306(1). It reads in part as follows: " 'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of."

If the security holder wishes to obtain a security interest in "Proceeds," he checks the box on the financing statement opposite the phrase "Proceeds of Collateral are also covered." Prudential did check the box in this case when it took as security for the payment of its loan of $3,450 an interest in the four pieces of automotive equipment of debtor. When the 1961 International was traded in, Prudential obtained a security interest in the new Diamond T to the extent of the original obligation due it from the debtor. See *Girard Trust Corn Exchange Bank* v. *Warren Lepley Ford, Inc.*, 25 Pa. D.&C.2d 395, and *Howarth* v. *Universal C.I.T. Credit Corp.*, 203 F. Supp. 279.

Here, however, Prudential attempts to extend its ability to trace "Proceeds" and establish a security interest in the moneys under a contract of insurance entered into between the insurer and the debtor.

While moneys paid by an insurance carrier to reimburse one for a loss which is covered under the insurance contract are many times referred to as insurance proceeds, they are not proceeds as that term is defined in §6A-9-306(1).

"Proceeds" by definition under the code arises from either a sale, exchange, collection or other disposition of either the collateral or proceeds. Insurance moneys or proceeds, however, arise and are paid as the result of a contract. An insurance contract or policy, so called, pertains to the persons to the contract and not to the item insured. It is a personal contract which does not attach to or run with the property insured.

The following language from *Rath* v. *Aerovias Interamericanas de Panama*, 205 Misc. 135, 140 (N.Y.), succinctly states the law:

> "It is axiomatic that a policy of property damage insurance is a personal contract which does not attach to or run with the title to the property insured. Therefore a creditor, whether simple or secured has no right in the first instance of a loss to the proceeds of the insurance taken out by the owner and made payable to himself, in the absence of an agreement to insure for the benefit of the creditor * * *. Where an owner who has agreed to insure for the benefit of his creditor procures insurance payable to himself alone, the creditor has an equitable lien on the proceeds * * *."

In *In the Matter of Largo Products, Inc.*, 8 Misc.2d 594 (N.Y.), an adding machine sold on a conditional bill of sale was stolen from the buyer. Sometime after the theft, the buyer made an assignment for the benefit of creditors. Included in the assignment was the insurance proceeds of policy which protected the machine against loss by burglary. The conditional vendor's petition that the assignee transfer all interest in the insurance policy to it was denied. The court in denying the petition relied upon the law enunciated in *Rath, supra*.

In the case of *Shelton* v. *Providence Washington Ins. Co.,* Tex. Civ. App., 131 S.W.2d 330, the local municipality had a tax lien on certain real estate. The court held that the named insured under a fire insurance policy was entitled to the insurance proceeds and not the city. In its decision the court stated that the city's lien did not extend to the insurance proceeds because a fire insurance policy is a personal contract between the insured and the insurer and does not in any manner run with the property.

The following statement is found in 9 A.L.R.2d at 301:

"Regarding a policy of property damage insurance as merely a matter of personal contract between the insurer and the insured, the courts, as will be seen by the cases in the subsequent sections of this annotation, adhere to the rule (except in a few isolated cases, or where express statutory provisions to the contrary control), that the holder of a mortgage or other lien on property has no right to the proceeds of insurance taken out thereon by the owner and made payable to himself, where such owner has not bound himself to carry insurance for the former's benefit. The point has also been made in some of the cases that the mortgage or other lien was on the property itself, and did not extend to the proceeds of insurance thereon; likewise, that the proceeds of a policy of insurance represent a debt resulting from the contract of insurance and not the property."

In Rhode Island we adhere to those principles.

Chief Justice Ames stated in *Nichols* v. *Baxter,* 5 R. I. 491, that a mortgagee merely as such had no interest in or claim to an insurance policy obtained by the mortgagor upon the mortgaged property for the mortgagor's own benefit.

We find, therefore, that the payments made by the insurance carrier in this cause are not proceeds as that term is used within the provisions of §6A-9-306(1) of the uniform commercial code. Insurance moneys or proceeds flow

from the insurance contract and not from the property insured.

An analysis of the language of §6A-9-306(1) furnishes further evidence of Prudential's inability to trace and reach the insurance moneys. It is our opinion that the loss here of the 1964 Diamond T was neither a sale, exchange, collection nor such other disposition as to come within the meaning of this section. We do not believe that the *disposition* referred to in this section can be construed to describe the demolition of the 1964 Diamond T and the subsequent compensation paid for its loss. This involuntary conversion of the tractor is not a disposition within the meaning of this particular provision of the code.

A similar position was taken in *Hoffman v. Snack*, 37 Pa. D.&C.2d 145. There the debtor had sued to recover for injuries and property damage suffered by him when his automobile collided with that of the defendant. The assignee of a security interest in the debtor's automobile sought permission to intervene as a party plaintiff so that it might share in the proceeds of any recovery had against the defendant to the extent of the amount of money still owed it by the debtor.

In denying the petition to intervene the court stated that contrary to the contention of the secured interest holder, §9-306(2) of the uniform commercial code gave no authority for its motion to intervene. It refused to extend the provisions of this particular section to instances where the property had not been transferred but had been depreciated through no fault of the debtor. It was pointed out that the security interest remained in the depreciated motor vehicle.

We believe, however, that the negligence of the debtor in the operation of a motor vehicle is immaterial in determining how far a secured party can trace his interest in "Proceeds." What we believe to be controlling is the fact

that the mishap whereby the 1964 Diamond T tractor was completely destroyed is not a disposition within the meaning of the code.

Prudential contends that the assignment of the insurance proceeds was in fact a creation of a security interest under the code and, since it was not recorded, United is foreclosed from claiming the disputed moneys.

Even if we assume that this position is sound, our affirmative reply to question 2 remains unchanged.

The explicit provisions of §6A-9-104(g) state in crystal-clear language that the transfer of an interest or claim in and to any policy of insurance is exempt from the provisions of chap. 9 of title 6A. The official commentary to this section of the code states this exclusion is given because rights under insurance policies are often put up for collateral and are adequately covered by existing law. While, as Prudential in its brief points out, Rhode Island has no statutory regulations concerning the assignment of rights in a policy of casualty insurance, this exclusion is nevertheless present in the code and must be given effect. There is no doubt that the debtor's assignment to United was a transfer of an interest or claim within the meaning of §6A-9-104(g). The adoption of this exclusion would seem to indicate a legislative recognition that this right to the insurance moneys is a matter of contract and does not run with the goods.

It is clear, therefore, that United's right to the balance of the insurance moneys presently on deposit in the registry of the superior court is established beyond question.

The papers herein with our decision endorsed thereon are returned to the superior court for further proceedings.

*Gallogly, Beals, Tiernan & Sweeney, Robert O. Tiernan,* for complainant.

*Kiernan, Connors, Kenyon & Wiley, James E. Pitochelli, Jr.,* for respondent Prudential Investment Corporation.

*Armstrong, Gibbons & Lodge, Joseph G. Kinder,* for respondent United Truck and Bus Service Company.