M.C. WAILES and Marilyn Wailes, husband and wife, Appellants (Defendants/Cross–Claimants),

v.

ROCKY MOUNTAIN PRE–MIX CONCRETE, Appellee (Defendant).

No. 89–151.

Supreme Court of Wyoming.

Nov. 22, 1989.

Norman E. Young of Hill, Young & Barton, P.C., Riverton, for appellants.

Arnold B. Tschirgi, Lander, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

This is a second stage controversy which follows from a judgment approved by this court in *Miles v. CEC Homes, Inc.,* 753 P.2d 1021 (Wyo.1988), with appellate issues now presented of priorities in that judgment between a third-party creditor who executed on the successful litigant's interest in the judgment and another creditor who held a chattel security interest in the receivable which had been the subject of the original litigation.[1]

1. Appellee did not file a brief and resort to   briefs filed in the district court is required to

In the original litigation, CEC Homes, Inc. (obviously itself insolvent) obtained a September 8, 1986 judgment in the amount of $31,789.02 against customer Meadowbrook Development, Inc. (Meadowbrook) and also against Maurice Miles, principal shareholder of Meadowbrook, by piercing the corporate veil. *Miles*, 753 P.2d at 1022-23. Meadowbrook itself was apparently also without creditable assets. Appellee here, Rocky Mountain Pre-Mix Concrete (Rocky Mountain), had in 1984 obtained judgment against CEC Homes, Inc. in the corrected amount of $18,236.31. Execution and garnishment proceedings against Meadowbrook proved fruitless and Rocky Mountain then accepted a security agreement from CEC Homes, Inc. which included tangible chattel property items and also the receivable due from Meadowbrook then not yet resolved in litigation.

In April 1986, appellants M.C. Wailes and Marilyn Wailes obtained a judgment against CEC Homes, Inc. in the amount of $45,043. A year later, they executed on the judgment and served notice of levy on CEC Homes, Inc. in order to secure a sheriff's sale of the Meadowbrook/Miles judgment asset which lawsuit was here on appeal. Sale was set for April 27, 1987, at which time the attorney for CEC Homes, Inc., in its behalf and as attorney in behalf of his law firm, objected to the sale. An application for injunction was made in the Wailes/CEC Homes, Inc. proceeding from which the execution sale was scheduled. Obviously, no order was granted and the sale proceeded. The executing creditor, Wailes, having then received notice of the assignment by the chattel security account receivable which was the basis of the judgment by CEC Homes, Inc. against Meadowbrook, proceeded with the sheriff's sale of the judgment separately obtained against Maurice Miles only. Wailes, as creditor, bid in that judgment asset for $32,000, settled with Miles and issued a release of judgment as execution sale purchaser. The judgment which CEC Homes, Inc. obtained from Meadowbrook, encumbered by underlying account assignment to Rocky Mountain, remains unsatisfied and obviously without present value to anyone.[2]

The present judgment amount of $19,-150.39 from which this appeal is taken is not clarified in method of computation in this record and the amount Miles paid for a satisfaction of his judgment after execution by Wailes is similarly undisclosed.

even understand the scope of the litigation as originally instituted. Actually, the litigation first developed between the attorney and judgment creditor as declaratory judgment petitioners suing both present appellant and appellee. CEC Homes, Inc. was actually a pro forma party and the real conflict was between CEC Homes' attorney claiming a lawyer's lien and M.C. and Marilyn Wailes and Rocky Mountain Pre-Mix Concrete claiming interest variously by assignment of the receivable and by judgment execution. Both attorney and judgment creditor, CEC Homes, Inc., were removed from the litigation by summary judgment and the case continued on cross-claim complaints between Wailes and Rocky Mountain Pre-Mix Concrete.

Since this court finds an issue of significance presented, we have undertaken a comprehensive factual review and legal analysis without any assistance of appellee briefing. In sternest terms, we would warn that summary reversal without extended review could realistically be expected in future cases where an appellee does not file an appellate brief. This court cannot properly or fairly assume the responsibility of analysis and review in behalf of one litigant where that litigant does not assist by advocacy briefing.

The case portrays a real tragedy which is not now presented on appeal. The lawyer representing CEC Homes, Inc., after a very credible performance showing diligence and ingenuity, lost his lawyer's charging lien by omission of claim notice. Attention to this detail comes highly recommended with knowledge to be gained from this unfortunate occurrence. Good law firm business practices need not be considered to be overbearing or presumptive. *See* W.S. 29-1-102.

2. After the opinion in this case had been circulated within this court for final preparation, a document signed by appellee was filed entitled "Notice of Satisfaction of Judgment" which states that appellee's judgment against CEC Homes, Inc. had been paid in full. Neither a stipulation nor a motion to dismiss the appeal pursuant to W.R.A.P. 18 has since been filed. The instrument now first filed in this court does not constitute satisfaction of the district court judgment entered June 2, 1989, if that was what was intended. If appellee makes no further claim against appellants, the case is still not moot since without a stipulated settlement, appellants are entitled to costs upon reversal pursuant to W.R.A.P. 10.04.

■ What we have is a litigative challenge and demand for payment by Rocky Mountain against Wailes to recover whatever Miles paid for his judgment satisfaction. In legal principle, we are faced with an inquiry whether a corporate collateral encumbrance of a receivable provides similar collateral security to the creditor against rights that the assignor might realize to pierce the corporate veil of the account debtor in reaching the debtor's principal shareholder. The briefing presented provides no comparable cases. It is apparent in trial court proceeding that the litigated issues included the identifiable proceeds provision of W.S. 34–21–935(b) (UCC § 9–306). That discussion and the one case now cited of *First Interstate Bank of Denver, N.A. v. Arizona Agrochemical Co.,* 731 P.2d 746 (Colo.App.1986) have a different factual basis and do not completely satisfy our review. This is genuinely a case of first impression in this jurisdiction and, for cases found, in any American appellate jurisdiction.

Our analysis leads to the concept that the Miles obligation when the corporate veil was pierced by affirmed judgment created something in the nature of a guarantee or secondary liability. Had Rocky Mountain sued or garnished Miles on its unsatisfied judgment against Meadowbrook, an occurrence not presented, we could be presented with a traced identifiable asset upon which a competitive priority could be claimed. Clearly, at the time the chattel security and assignment of receivable was given, no vested claim against the debtor's shareholder existed and nothing in the nature of the document indicated an intended reliance on the third-party's obligation as an asset to be encumbered.

In *First Interstate Bank of Denver, N.A.,* 731 P.2d 746, debtor sold the secured assets at an auction and then used the funds to satisfy the third-party judgment for which he received a satisfaction. The appellate court held, at the time the secured creditor attempted to enforce any security interest it had in the proceeds, that the only identifiable proceeds remaining to the debtor consisted of a satisfaction of judgment with a value only to the debtor.

Consequently, that factual situation is of little help where a third-party and differentiated asset were involved here.

Determination of this case presents two facets. First, we analyze whether the original February 8, 1985 filed security agreement including "balance due on account & agreement with Meadowbrook Development, Inc." created an encumbrance thereafter realized against that part of the judgment entered September 8, 1986 which found Maurice Miles to be "personally liable for monies due and owing the plaintiffs." If it is determined the shareholder claim was not encumbered by the security agreement, the further question remains whether settlement of the Miles judgment debt constituted recoverable proceeds by the creditor who held the assignment of the Meadowbrook debt.

We answer both questions in the negative. Although we are not informed when the lawsuit was filed by CEC Homes, Inc. as originally or thereafter including Miles as a defendant, it is clear the contingent collection was not defined in secured document which was given to Rocky Mountain in a fashion sufficient to constitute reasonable identification of the collateral. W.S. 34–21–910 (UCC § 9–110); *Landen v. Production Credit Ass'n of Midlands,* 737 P.2d 1325 (Wyo.1987). This case with after-determined shareholder liability is comparable to the indemnity agreement found in *State Bank of Wheatland v. Bagley Bros.,* 44 Wyo. 307, 11 P.2d 592 (1932) for which filing a recording was necessary to preserve priority. In similar result, the case of *Matter of Binning,* 45 B.R. 9, 11–12 (S.D.Ohio 1984) (quoting *Ray v. City Bank and Trust Co. of Natchez, Mississippi,* 358 F.Supp. 630, 639 (S.D.Ohio 1973)) did not extend crop collateral to the agricultural payment-in-kind diversion payments and observed that the code sections "do not require slavish delineation of the collateral secured. But they do require a reasonable identification of the collateral so that 'reasonable further inquiry will disclose the complete state of affairs.'"

We hold the security interest terminology encumbered the account and a cost

sharing agreement executed with a corporation, but then fails to meet the reasonable identification requirements of W.S. 34–21–910 to also encumber an inchoate claim that the debtor might obtain in litigation directed to enforce obligation of the corporation upon its shareholders or officers by a thesis of indemnity, guaranty or piercing of the corporate veil. This follows case law that the security interest is not attributable to the third-party claim as identifiable proceeds. *In re Hix,* 9 UCC Rep.Serv. 925 (S.D.Ohio 1969); *Hoffman v. Snack,* 2 UCC Rep.Serv. 862 (Pa.1964). Compare *In re Stone,* 52 B.R. 305 (W.D. Ky.1985), as the only tort case of converse authority found where, as the result of a civil action against a veterinarian and others, the debtors settled the lawsuit and recovered a large sum of money from the negligence claim.

■ The next question then to be addressed is whether the proceeds statute, W.S. 34–21–935(b) (UCC § 9–306), would maintain a lien on amounts realized after execution sale of the judgment asset as a claim against the account debtor's shareholder or officer. Although an identical factual situation was not found, a number of recent bankruptcy proceedings relevant to the proceeds issue are available for consideration where recovery was made by a lawsuit against a third party. In *In re Jones,* 19 B.R. 293 (E.D.Va.1982), the court did not extend chattel coverage on a car to the proceeds of a lawsuit against an insurance agent for failure to obtain insurance for the customer. Similarly, a check obtained to satisfy a judgment based on a breach of warranty did not constitute proceeds created by liquidating the asset held by the creditor as a security interest in a check in *In re Continental Trucking, Inc.,* 16 UCC Rep.Serv. 526 (M.D.Fla.1974).

In the absence of statute or explicit provisions and security agreement requiring

insurance, a like result has obtained non-inclusion of fire casualty insurance proceeds upon loss of the secured chattel. *Quigley v. Caron,* 247 A.2d 94 (Me.1968); *In re Boyd,* 658 P.2d 470 (Okl.1983). In accord, see *Peoples State Bank of Ellinwood, Kan. v. Marlette Coach Co.,* 336 F.2d 3 (10th Cir.1964) and *Bank of New York v. Margiotta,* 99 Misc.2d 423, 416 N.Y.S.2d 493 (1979). *Cf. Universal C.I.T. Credit Corp. v. Prudential Inv. Corp.,* 101 R.I. 287, 222 A.2d 571 (1966) and *In re Territo,* 32 B.R. 377 (E.D.N.Y.1983).

A somewhat more attenuated controversy is created where the recovery is from a third-party tort feasor rather than by virtue of property damage insurance. Even the exceptional cases are inapplicable since the judgment against the corporation, Meadowbrook, remained undisturbed and only the unassigned separate liability of the shareholder was sold at execution. The term identifiable [3] "presumably requires that the secured party show that the cash or noncash items were actually received upon the sale, exchange, collection or other disposition of the collateral of proceeds." 9 Hawkland, Lord & Lewis UCC Series § 9–306:03 at 23 (1986).

In denying extension as unidentifiable proceeds, we also consider the nature of the judgment against Miles. "A corporation is recognized as a separate entity, distinct from the individuals comprising it, even though all of its stock is owned by a single individual." *Atlas Const. Co. v. Slater,* 746 P.2d 352, 355 (Wyo.1987). *See also Amfac Mechanical Supply Co. v. Federer,* 645 P.2d 73, 77 (Wyo.1982). Whether the process utilized to create liability of the shareholder is disregard of corporateness, H. Henn & J. Alexander, Laws of Corporations § 146 at 344 (3d ed. 1983); piercing the corporate veil, *Atlas Const. Co.,* 746 P.2d 352; disregard of corporate entity, *Amfac Mechanical Supply Co.,* 645 P.2d

**3.** It is noted that consideration of the shareholder claim as identifiable initially achieves pertinence whether first encumbered under W.S. 34–21–910 and, if not, then whether identifiable as proceeds under W.S. 34–21–935(b). The word does not mean exactly the same thing for application in each statute. In first use, it means to

be reasonably designated or described and, in second statute, traceability appears to be the concept presented. In one usage, the asset is encumbered and, in second context, it is traced as "proceeds." The proceed traceability inquiry appears as the basis for trial court decision and not sufficiency of encumbrance identification.

73; or one which denies interposition of corporate entity, *In re Clarke's Will*, 204 Minn. 574, 284 N.W. 876 (1939), the litigative claim process involves, as in this case, finding an entity liable for the obligation of the corporation as a result of the process by which the corporation was created or operated.

In this case, the chattel security identified the contractual interest between CEC Homes, Inc. and the account debtor, Meadowbrook, who were the two parties in the cost sharing contract. It did not include the further right that CEC Homes, Inc. might have to supplement its contractual interest by invalidation of any corporate entity defense if claim was to be made against the shareholder also. Under these circumstances, we hold, in addition to judgment on the mortgaged contractual obligation, that CEC Homes, Inc., in final resolution, obtained an independent and unencumbered judgment against Maurice Miles, president of the account debtor. Consequently, as this case has unfolded, we find no claim of Rocky Mountain against Miles with an established superior priority sufficient to defeat the title obtained by Wailes through their purchase at the sheriff's execution sale.

Reversed and remanded for entry of a judgment in favor of appellants on appellee's cross-claim.