**Supreme Court**

No. 2013-91-Appeal.
(PC 12-1150)

Rhode Island Joint Reinsurance  :
    Association

v.  :

Kevin O'Sullivan et al.  :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Rhode Island Joint Reinsurance   :
        Association

        v.            :

Kevin O'Sullivan et al.      :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  In this interpleader action filed by Rhode Island Joint

Reinsurance Association (RIJRA), Stanley Gurnick and Phoenix-Gurnick, RIGP (collectively,

the Gurnicks) appeal from a grant of summary judgment by the Superior Court in favor of

Navigant Credit Union (Navigant).  The Superior Court decided that Navigant was entitled to

insurance funds under an insurance policy on a parcel of property in North Providence, Rhode

Island.  This case came before the Supreme Court for oral argument pursuant to an order

directing the parties to appear and show cause why this appeal should not be summarily decided.

After carefully considering the written and oral submissions of the parties, we are satisfied that

cause has not been shown and we will proceed to decide the case at this time.  For the reasons set

forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

The material facts in this case are largely undisputed.  On June 8, 2006, Kevin O'Sullivan

borrowed the sum of $221,000 from Patrick T. Conley and Gail C. Conley in order to purchase

four lots of land located on Pearl Avenue in North Providence.[1] O'Sullivan secured the note to the Conleys with a mortgage on the Pearl Avenue properties.[2] Thereafter, on June 1, 2009, the Conleys assigned the promissory note and mortgage for these properties to Stanley Gurnick (the first mortgage or the Gurnick mortgage).

On September 24, 2009, Navigant Credit Union (Navigant) entered into a "revolving credit loan" for $500,000 with Patriot Site of RI, Inc. (Patriot Site), an entity owned by O'Sullivan. O'Sullivan then granted a second mortgage to Navigant for the property located at 39 Pearl Avenue (being one of the lots which O'Sullivan had purchased from the Conleys)[3] in order to secure the loan to Patriot Site (the second mortgage or the Navigant mortgage).[4] The Navigant mortgage included a provision that required O'Sullivan to insure the mortgaged property against loss or damage to the buildings and other improvements to the land by fire or other risks of the kind commonly insured against "by prudent owners or lessees of buildings or improvements in the locality." Pursuant to the insurance requirement in the Navigant mortgage, O'Sullivan obtained insurance for the property at 39 Pearl Avenue from RIJRA. The insurance policy listed O'Sullivan as the insured and Navigant as the mortgagee and loss payee.

---

[1] The four lots of land purchased by O'Sullivan are listed as Lot Nos. 788, 789, 790, and 791 of Assessor's Plat No. 5 in the North Providence land records.

[2] This mortgage was duly recorded with the Town of North Providence Office of Land Evidence Records in Book 2276 at page 324.

[3] The 39 Pearl Avenue property is Lot No. 788. The other three lots purchased by O'Sullivan are not directly involved in the instant action. Accordingly, any references to the property refer to the 39 Pearl Avenue property.

[4] The Navigant mortgage was recorded with the Town of North Providence Office of Land Evidence Records in Book 2606 at page 234.

Sometime in early 2010, the property at 39 Pearl Avenue sustained water damage that was insured by the RIJRA insurance policy.[5] RIJRA appraised the damage and determined that the covered loss to the property amounted to $79,336.83.

At some time thereafter, O'Sullivan defaulted on his promissory note to Gurnick. Consequently, Gurnick instituted foreclosure proceedings on the first mortgage. Phoenix-Gurnick, RIGP (Phoenix-Gurnick), a partnership owned primarily by Stanley Gurnick and created for the purpose of taking possession of the mortgaged properties on Pearl Avenue, purchased the Pearl Avenue properties, including the property located at 39 Pearl Avenue, for the sum of $330,000 at the foreclosure sale on April 21, 2011.

On March 2, 2012, RIJRA filed the instant interpleader action in the Providence County Superior Court seeking a declaration as to which party was entitled to the insurance proceeds for the damage to the 39 Pearl Avenue property.[6] RIJRA deposited the total of $79,336.83 for the insurance proceeds into the Superior Court registry. The Gurnicks and Navigant filed cross-motions for summary judgment, each claiming that it was entitled to the insurance proceeds. The Gurnicks claimed that they owned the 39 Pearl Avenue property as a result of the foreclosure sale and that Navigant's rights were extinguished upon that sale. Navigant asserted

_____

[5] The copy of the insurance policy in the record states that the policy was in effect from December 2010 through December 2011. However, the parties do not dispute that the insurance policy was in effect at the time the water damage occurred.

[6] RIJRA named the following interested parties in 39 Pearl Avenue in its complaint: the Conleys, pursuant to a mortgage on the property; Navigant, also pursuant to a mortgage on the property; Stanley Gurnick, pursuant to a mortgage; Phoenix-Gurnick, pursuant to a mortgage; Monica Donovan, pursuant to a mortgage; Bryan Nordan and Darlene Jutras, pursuant to an execution levied by them on the property; and the Rhode Island Department of Environmental Management (RIDEM), pursuant to a notice of violation on the property. O'Sullivan and Monica Donovan were defaulted in this action for failure to file an answer. Bryan Nordan and Darlene Jutras did not contest the cross-motions for summary judgment or file a notice of appeal from the summary judgment which entered in regard to all parties in the case. RIDEM was voluntarily dismissed from the case in a stipulation filed with this Court on May 8, 2013.

that it was entitled to the insurance proceeds as the named mortgagee/loss payee in the insurance policy at issue.

The cross-motions for summary judgment came before the Superior Court for hearing on January 29, 2013. The hearing justice issued a bench decision on that day, holding that Navigant was entitled to the insurance proceeds because the funds were personal property under the insurance contract and Navigant had required O'Sullivan to name it as a loss payee under that contract. Consequently, the hearing justice granted Navigant's motion for summary judgment and denied the Gurnicks'. Final judgment in favor of Navigant entered on February 21, 2013.

The Gurnicks timely filed a notice of appeal to this Court.

## II

## Standard of Review

"This Court reviews a trial court's decision to grant summary judgment de novo." In re Estate of Manchester, 66 A.3d 426, 430 (R.I. 2013). "We apply the same standards and rules as did the motion justice." Beauregard v. Gouin, 66 A.3d 489, 493 (R.I. 2013). In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. See id. "Summary judgment is appropriate when no genuine issue of material fact is evident from 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' and the motion justice finds that the moving party is entitled to prevail as a matter of law." Swain v. Tyre, 57 A.3d 283, 288 (R.I. 2012) (quoting Beacon Mutual Insurance Co. v. Spino Brothers, Inc., 11 A.3d 645, 648 (R.I. 2011)). Similarly, we "review[] a trial justice's conclusions on questions of law de novo." Option One Mortgage Corp. v. Aurora Loan Services, LLC, 78 A.3d 781, 785 (R.I. 2013) (quoting Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1078 (R.I. 2013)).

## Discussion

The parties agree that there are no genuine issues of material fact remaining. Accordingly, we are satisfied that the hearing justice correctly concluded that the matter was ripe for summary judgment. The only issue on appeal for us to decide, therefore, is which party is entitled to the insurance proceeds as a matter of law.

On appeal, the Gurnicks contend that the hearing justice erred in holding that Navigant was entitled to the insurance proceeds because Navigant did not have title to the 39 Pearl Street property and because any interest that Navigant had in the property was ended at the foreclosure sale. The Gurnicks argue that, because they had title to the property pursuant to their first mortgage on it and then through the foreclosure sale, they are entitled to the insurance proceeds from the loss. In contrast, Navigant asserts that insurance policies are contracts and that insurance is separate and distinct from the ownership of the insured property.

We agree with Navigant. This Court first stated more than a century and a half ago the general principle that "[a] mortgagee of property, real or personal, merely as such, has no interest in or claim to a policy of insurance effected by the mortgagor upon the property mortgaged for his own benefit." Nichols v. Baxter, 5 R.I. 491, 493-94 (1858). More than a century later, we reaffirmed this general principle and held that "[a]n insurance contract or policy * * * pertains to the persons to the contract and not to the item insured. It is a personal contract which does not attach to or run with the property insured." Universal C.I.T. Credit Corp. v. Prudential Investment Corp., 101 R.I. 287, 292, 222 A.2d 571, 574 (1966). While we acknowledge that Universal C.I.T. Credit Corp. involved insurance on personal property and not real property, we are of the opinion that this distinction is immaterial to the issue before us. See id. Accordingly,

we reiterate that insurance policies are to be treated as contracts. See Henderson v. Nationwide Insurance Co., 35 A.3d 902, 908 (R.I. 2012) ("An insurance policy is foremost 'a contract between the insured and the insurer[.]'") (quoting Employers' Fire Insurance Co. v. Baker, 119 R.I. 734, 741, 383 A.2d 1005, 1008 (1978)).  Here, the insurance contract was between RIJRA, O'Sullivan, and Navigant as the loss payee and mortgagee.  The Gurnicks were not parties to it and did not become parties to the contract solely as a result of their holding the first mortgage on the property at the time the loss occurred or because they acquired title to the property at the foreclosure sale.

The Gurnicks argue that any insurable interest which Navigant had in the property was extinguished by the foreclosure sale.  While we agree with the Gurnicks that the foreclosure sale may have extinguished the interest that Navigant possessed in the property, we find no error in the hearing justice's conclusion that Navigant was, nonetheless, entitled to the insurance proceeds.  It is a general principle of insurance law that an insurable interest is determined as of the date of the loss.  See 44 Am. Jur. 2d Insurance § 936 at 225 (2013) (stating that "[g]enerally, the extent of an insurable interest in property should be determined as of the date of the loss," and noting, for example, that "[a] subsequent sale of the property on which the insured building had been located before it was destroyed by fire does not change the status of the property as of the date of the fire for insurance purposes").  There is no dispute that at the time the loss occurred—March of 2010—the foreclosure sale had not taken place and that Navigant still possessed a second mortgage on the property.  We are satisfied that Navigant's status as the second mortgagee on the property provided it with an insurable interest in the property at that time.  See generally 3 Couch on Insurance 3d § 42:28 at 42-48 (3d Rev. ed. 2011) (stating that "[a] mortgagor and a mortgagee [of real property] each have an independent insurable interest in

- 6 -

the property"). Accordingly, because Navigant possessed an insurable interest in the property as of the date the loss occurred, we agree with the hearing justice and conclude that Navigant was entitled to the insurance proceeds.

The Gurnicks argue that, even though they were not named in the insurance policy as a loss payee, they should be granted an equitable lien on the proceeds from the policy by virtue of their mortgage on the property being superior to that of Navigant. They base their argument on Nichols, wherein this Court explained that "[a]n executory agreement by the mortgagor to insure for the benefit of the mortgagee, whether express or implied, gives to the latter an equitable lien upon the money due upon a policy taken out by the former upon the mortgaged premises * * *." Nichols, 5 R.I. at 494. The Gurnicks urge us to follow the example of the bankruptcy court, that cited Nichols for the proposition that a court should "protect the mortgagee's secured claim" and held that a mortgagee had an equitable lien on insurance proceeds even though the mortgagor had failed to name the mortgagee on the insurance policy. In re Natale, 174 B.R. 362, 364-65 (Bankr. D.R.I. 1994). We are of the opinion that the Gurnicks' reliance on these cases is unavailing. Nichols emphasized the importance of "[a]n executory agreement by the mortgagor to insure for the benefit of the mortgagee." See Nichols, 5. R.I. at 494. Similarly, in Natale, the mortgage agreement had expressly required the insured mortgagor to take out insurance on the property and name the mortgagee as loss payee. See Natale, 174 B.R. at 364. No such requirement, expressed or implied, existed here. In a final attempt to persuade us of the existence of such an agreement to insure, the Gurnicks, for the first time on appeal, refer to the statutory mortgage covenants, which were expressly incorporated into the first mortgage, to

argue that their first mortgage did, in fact, require O'Sullivan to insure the property.[7] This argument, however, was waived. As this Court has stated, "[a]lthough our review of [a motion for] summary judgment is de novo, it is not without limits" and "a party may not assert an argument on appeal that was not presented below." See Konar v. PFL Life Insurance Co., 840 A.2d 1115, 1120 (R.I. 2004); see also Peloquin v. Haven Health Center of Greenville, LLC, 61 A.3d 419, 430 (R.I. 2013) ("It is axiomatic that this [C]ourt will not consider an issue raised for the first time on appeal that was not properly presented before the trial court.") (quoting State v. Breen, 767 A.2d 50, 57 (R.I. 2001)); cf. 36 C.J.S. Federal Courts § 460 at 465 (2003) (stating that "a party, on review, cannot assume an attitude inconsistent with, or different from, that taken by him or her at the trial").

In any event, even if we were to consider the Gurnicks' contention that the first mortgage required O'Sullivan to insure the property because of the statutory mortgage covenants set forth in G.L. 1956 § 34-11-20, this contention is incorrect as a matter of law. Section 34-11-20 sets out the meaning of the mortgage covenants and states, in pertinent part, that:

> "The mortgagor * * * covenants with the mortgagee * * * that insurance against loss by fire shall be kept and maintained on the buildings, if any, on the mortgaged premises in such office or offices as the mortgagee or his or her heirs, executors, administrators, or assigns shall approve, in a sum not less than the amount secured by the mortgage deed, or as otherwise provided herein, and that the policy or policies of such insurance shall be delivered to and held by the mortgagee and assigned and transferred, or made payable in case of loss, to the mortgagee or his or her heirs, executors, administrators or assigns, as collateral security hereto * * *." (Emphasis added.)

Significantly, the mortgage covenants do not contain a requirement that the mortgaged property be insured against loss because of water damage, as occurred here. We further note that, at the

---

[7] The Gurnicks conceded in the Superior Court that the first mortgage had not required O'Sullivan to insure the property.

time the first mortgage was conveyed, the property was undeveloped and there were no buildings on it to trigger application of the insurance provision in the statutory mortgage covenants. Consequently, we are constrained to conclude that the first mortgage did not include a requirement that the property be insured against the sort of damage that occurred here and that the Gurnicks are not entitled to an equitable lien on the insurance proceeds. Accordingly, we hold that the hearing justice correctly determined that Navigant was entitled to the insurance proceeds.

## IV

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The record in this case may be returned to that tribunal.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Rhode Island Joint Reinsurance Association v. Kevin O'Sullivan et al.

**CASE NO:** No. 2013-91-Appeal.
(PC 12-1150)

**COURT:** Supreme Court

**DATE OPINION FILED:** June 6, 2014

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Michael A. Silverstein

**ATTORNEYS ON APPEAL:**

For Defendants: Patrick T. Conley, Esq.

For Navigant: Michael J. Polak, Esq.